In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2037

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TYRONE WALLACE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 196—**William J. Hibbler**, *Judge.*

ARGUED JANUARY 10, 2003—DECIDED APRIL 16, 2003

Before EASTERBROOK, MANION, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* A jury convicted Tyrone Wallace of being a felon in possession of a firearm while having three prior violent felony convictions. The district court sentenced him to 300 months imprisonment for the offense. In this appeal he raises three issues: (1) that the district court erred in ordering him to turn over to the government a prior statement of a defense witness, (2) that his Sixth Amendment right to a speedy trial was violated, and (3) that the district court wrongly applied the armed-career-criminal statute to enhance his sentence. We reject each claim and affirm both his conviction and sentence.

## I. History

The charge in this case arose out of an incident that occurred at the Chicago apartment of Carolyn Kirkman on the night of April 26, 1999. Wallace spent much of that day in and around Kirkman's apartment. The two had four children together, and Wallace made frequent visits to the apartment, but he did not live there. Around 10:00 p.m. on the evening of the 26th, Kirkman left the apartment for work and Wallace stayed behind. At some point after Kirkman left, Wallace went on a walk through the neighborhood and encountered Ruby West, who was pregnant at the time. He invited West back to Kirkman's apartment to watch videotapes.

When they reached the back porch of the Kirkman's apartment, Wallace retrieved a gun from above the door and pointed it at West's head. He threatened to shoot her in the abdomen and kill her baby unless she performed oral sex on him. West began to comply with the demand, when one of Kirkman's children, from inside the apartment, told Wallace that he was wanted on the telephone.

Wallace ordered West to go with him into the apartment. While Wallace was on the phone, or soon after, West was able to escape. When she got out of the apartment, she spotted two police officers and ran toward them yelling that Wallace had a gun. Officers Grassi and Dougherty spoke briefly with West and then went to the apartment and knocked on the door. Wallace opened the door and let them inside. Once the officers were inside the apartment, Wallace became belligerent, and the police were forced to place him in handcuffs. After restraining Wallace, Officer Dougherty conducted a visual sweep of the apartment. He noticed a gun holster on the kitchen window sill, and while going to retrieve the holster, he spotted a nine-millimeter pistol lying on the kitchen floor. Both items were seized, and the officers placed Wallace under arrest.

He was charged by the State of Illinois for possession of the pistol, but the State did not proceed with that charge.

Nearly a year later, on March 6, 2001, a federal grand jury returned a one-count indictment charging Wallace with being a felon in possession of a firearm at a time when he had three previous convictions for violent felonies, in violation of 18 U.S.C. §§ 922(g) and 924(e)(1) (2003). On October 11, 2001, following a two-day trial, the jury convicted him, and he was sentenced to 300 months imprisonment.

## II.  Analysis

### A.  Disclosure of Defense Investigator's Report

Before trial, Wallace moved to suppress the admission of the pistol into evidence on the ground that the warrantless search of the apartment violated the Fourth Amendment. The government argued that Wallace lacked a reasonable expectation of privacy in the apartment because it was Kirkman's residence, not his. At the beginning of the suppression hearing, the government informed the district court that if the defendant called Kirkman to testify as a witness, it would request a copy of a defense investigator's report of a prior interview with Kirkman in which she discussed, among other things, the frequency of Wallace's visits to the apartment. Wallace objected, arguing only that there was no rule requiring reciprocal discovery or disclosure of witness statements by the defense in a criminal case. The court disagreed and ordered that after Kirkman testified, the investigator's report must be turned over to the government. The government did not use the report at the suppression hearing. At trial, however, the government did use it to impeach Kirkman when her testimony conflicted with statements recorded in the investigator's report.

Wallace now contends that the district court erred in ordering him to disclose the investigator's report and that this error denied him a fair trial. As he did in the district court, Wallace insists that there is no rule of reciprocal discovery of defense witness statements in criminal cases. He is wrong, of course. Federal Rule of Criminal Procedure 26.2(a) provides:

> After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government *or the defendant and the defendant's attorney* to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.

FED. R. CRIM. P. 26.2(a) (emphasis added).

Wallace does not argue that Rule 26.2 is inapplicable to this case; indeed, he does not cite or even mention Rule 26.2 at all. In reviewing the record, we find no reason why Rule 26.2 would not require Wallace to disclose the report. Subsection (g) of the rule makes clear that it applies in suppression hearings. FED. R. CRIM. P. 26.2(g). Further, it is apparent that the defense investigator's report qualifies as a "statement" of the witness under the definition of that term provided in subsection (f)(2) of the rule.[1]

---

[1]  Rule 26.2(f) provides:

"As used in this rule, a witness's 'statement' means:

(1) a written statement that the witness makes and signs, or otherwise adopts or approves;

(2) a substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is
(continued...)

Instead of discussing Rule 26.2, Wallace contends that requiring reciprocal discovery of defense witness statements violates his Fifth and Sixth Amendment rights. But he fails to acknowledge that this argument was rejected by a unanimous Supreme Court in *United States v. Nobles*, 422 U.S. 225, 234, 240 (1975). In *Nobles*, the Court held that ordering a defendant to turn over a defense investigator's report of interviews with witnesses did not violate the Fifth Amendment because it was not equivalent to compelling information from the defendant. *Id.* at 234. And the Court held that such an order did not violate the Sixth Amendment because there was no intrusion on the attorney-client relationship that impaired counsel's ability to provide effective representation. *Id.* at 240. Indeed, *Nobles* was a basis on which Rule 26.2 was added to the Federal Rules of Criminal Procedure. *See* FED R. CRIM. P. 26.2 advisory committee's note.

Wallace's argument that the district court's order violated the work-product rule is equally unpersuasive. Rule 26.2 contains no general work-product exception. *See* 2A WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 437, at 217 (3d. ed. 2000). Rather, 26.2(c) provides that if the party calling the witness claims that the prior witness statement contains privileged information, the district court shall review the statement *in camera* and excise any portions that are in fact privileged. FED. R. CRIM. P. 26.2(c) Wallace never requested that the district court review the state-

---

[1]  (...continued)

>   contained in any recording or any transcription of a recording; or

>   (3) the witness's statement to a grand jury, however taken or recorded, or a transcription of such a statement."

FED. R. CRIM. P. 26.2(f).

ment and redact potentially privileged material; rather, he simply maintained that no reciprocal discovery was required. Rule 26.2 provides adequate safeguards to protect attorney work-product, *see Goldberg v. United States*, 425 U.S. 94, 106 (1976) (noting that "the primary policy underlying the work-product doctrine . . . is adequately safeguarded by the Jencks Act," which was incorporated into Rule 26.2) but Wallace, for whatever reason, simply chose not to use those safeguarding procedures.

**B.  Sixth Amendment Right to a Speedy Trial**

Wallace was arrested by state authorities on April 26, 1999. The federal indictment was returned on March 6, 2001, and the case went to trial on October 9, 2001. Wallace contends that the nearly two-year delay between his state arrest and the return of the federal indictment violated his Sixth Amendment right to a speedy trial.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. It is well-settled that the Sixth Amendment speedy-trial right has no application prior to arrest or indictment. *Doggett v. United States*, 505 U.S. 647, 655 (1992); *United States v. MacDonald*, 456 U.S. 1, 6 (1982). Wallace's claim is based on the assumption that his speedy-trial right was triggered when he was arrested on April 26, 1999. But that arrest was made by state authorities on a state charge, and therefore does not start the Sixth Amendment speedy trial clock for purposes of the subsequent federal charge. *United States v. Dickerson*, 975 F.2d 1245, 1252 (7th Cir. 1992) ("The . . . period between [defendant's] arrest by state authorities on state charges and the return of the federal indictment cannot be the basis of a Sixth Amendment claim."). Wallace's right to a speedy trial on the federal charge did not arise until the federal indictment

issued on March 6, 2001, when the formal prosecution of the federal charge began. *See Doggett*, 505 U.S. at 655. Thus, we find no violation of Wallace's Sixth Amendment rights.

It is of course true that, while not creating a Sixth Amendment issue, "delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment." *MacDonald*, 456 U.S. at 7 (citation omitted). Wallace, however, has made no due process claim in this appeal. Even if he had, we doubt he would be entitled to relief. To have his indictment dismissed on due-process grounds, Wallace would have had to show that (1) the pre-indictment delay caused substantial prejudice, and (2) "the delay was an intentional device to gain tactical advantage over the accused." *Dickerson*, 975 F.2d at 1252 (quoting *United States v. Marion*, 404 U.S. 307, 324 (1971)). We see no evidence that would lead us to believe he has suffered substantial prejudice or that the government used the delay to gain an advantage.

## C. Sentence Enhancement

At sentencing, the district court determined that Wallace was eligible for the armed-career-criminal sentence enhancement provided in 18 U.S.C. § 924(e). Under this provision, a defendant who violates 18 U.S.C. § 922(g), and who has at least three prior convictions for violent felonies or serious drug offenses, is subject to a mandatory minimum sentence of fifteen years and an elevated offense level for the § 922(g) conviction. 18 U.S.C. § 924(e) (2003); U.S.S.G. § 4B1.4 (2003). The district court held that Wallace qualified for the enhancement based on three prior violent felony convictions: a 1990 Illinois aggravated-battery conviction, a 1993 Illinois second-degree-murder conviction, and a 1993 Illinois unlawful-restraint conviction. On appeal, Wallace concedes that aggravated bat-

tery and second-degree murder qualify as violent felonies, but he maintains that the district court erred in classifying unlawful restraint as a violent felony.

Whether a prior offense qualifies as a "violent felony" is a question of law that we review *de novo. United States v. Bryant*, 310 F.3d 550, 552 (7th Cir. 2002). Under the armed-career-criminal statute, "violent felony" includes any felony that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*" 18 U.S.C. 924(e)(2)(B) (emphasis added).

Under the Illinois Criminal Code, "[a] person commits the offense of unlawful restraint (a class 4 felony) when he knowingly without legal authority detains another." 720 ILLINOIS COMP. STAT. § 5/10-3 (2003). Because the use or threat of physical force is not an element of this offense, *see People v. Bowen*, 609 N.E. 2d 346, 361 (Ill. App. 1993), we must determine if it "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). In doing so, we look to the crime's statutory elements, without considering the underlying facts of the conviction. *Taylor v. United States*, 495 U.S. 575, 600 (1990); *United States v. Fife*, 81 F.3d 62, 64 (7th Cir. 1996).

Wallace argues that unlawful restraint is not a violent felony because one can commit the offense in non-violent ways—for instance, through deception, trickery, or fraud. But this reasoning ignores the fact that the statute's "otherwise" clause focuses on the "potential" for physical injury, not whether physical injury actually or necessarily results from the commission of the offense. *United States v. Franklin*, 302 F.3d 722, 724 (7th Cir. 2002). We have held that "'in determining whether an offense falls under

the "otherwise" clause, the benchmark should be the possibility of violent confrontation, not whether one can postulate a nonconfrontational hypothetical scenario.'" *Fife*, 81 F.3d at 64 (quoting *United States v. Davis*, 16 F.3d 212, 217 (7th Cir. 1994)).

Our recent decisions finding that escape qualifies as a crime of violence are instructive. *See Bryant*, 310 F.3d at 554; *Franklin*, 302 F.3d at 725. In *Franklin*, we noted that the potential for physical injury exists when the crime of escape is committed because "'[a] defendant . . . in evading those trying to recapture him, may feel threatened by police officers, ordinary citizens, or even fellow escapees. Consequently, violence could erupt at any time.'" 302 F.3d at 724 (quoting *United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir. 1994)). A similar potential for violence exists when one private citizen unlawfully restrains another's liberty against his or her will. No doubt in many cases of unlawful restraint, the assailant actually uses force to restrain the victim. *See, e.g.*, *People v. Alvarado*, 600 N.E.2d 1236, 1237 (Ill. App. 1992) (defendant convicted of unlawful restraint for grabbing victim's neck and choking her when she said she was ready to go home); *People v. Williams*, 582 N.E.2d 1158, 1160 (Ill. App. 1991) (defendant convicted of unlawful restraint for grabbing victim around the waist and holding her so that she could not leave). The risk of physical injury in these situations is obvious. But even in cases where the assailant attempts to restrain the victim without the use or threat of force, the potential exists that the victim may resist the assailant's efforts and try to escape. The assailant then may resort to force in an effort to prevent the victim from leaving.

In sum, we think that a situation where one person restrains another against his or her will presents a "serious potential risk of physical injury," whether it be in the initial restraint or the possible resulting confrontation

between assailant and victim if the victim attempts to leave. Therefore, we find that the Illinois crime of unlawful restraint is a "violent felony" for the purposes of the armed-career-criminal statute. The district court properly applied the sentence enhancement to Wallace.

### III. Conclusion

For the foregoing reasons, Wallace's conviction and sentence are AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*