In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-1326

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

REGGIE GOLDEN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 05 CR 119—**John C. Shabaz**, *Judge.*

ARGUED SEPTEMBER 18, 2006—DECIDED OCTOBER 25, 2006

Before BAUER, ROVNER, WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Reggie Golden pleaded guilty to possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1) and was sentenced to 200 months imprisonment. On appeal, Golden challenges the district court's enhancement of his sentence pursuant to the armed-criminal career statute, 18 U.S.C. § 924(e). Golden argues that the district court erred in determining that Golden had committed three prior violent felony offenses for the purpose of the § 924(e) enhancement. Specifically, Golden contends that the court erred in classifying as "violent felonies" his two prior convictions for failure to report to county jail. We affirm.

## I. Background

On November 10, 2005, Golden pleaded guilty pursuant to a written plea agreement to count II of a superceding indictment, possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).

At the sentencing hearing, Golden objected to the Pre-Sentence Investigation Report's recommendation that he was subject to the sentencing enhancement provision of § 924(e). Golden had been convicted previously of possession of a short-barreled shotgun, false imprisonment, and, on two separate occasions, failure to report to county jail in violation of the Wisconsin Criminal Code, WIS. STAT. § 946.425(1m)(b). Golden conceded that his convictions for possession of a short-barreled shotgun and false imprisonment were violent felonies. Golden argued, however, that failure to report to jail did not constitute a violent felony pursuant to § 924(e).

The district court accepted the plea agreement and, over Golden's objection, found that the provisions of § 924(e) applied to Golden's sentence because Golden had at least three previous convictions for violent felony offenses, including the two convictions for failure to report to county jail. The district court then determined that the applicable guideline sentence was 188 to 235 months and sentenced Golden to 200 months of imprisonment, followed by five years of supervised release. This timely appeal followed.

## II. Discussion

Under § 924(e), a defendant who violates 18 U.S.C. § 922(g) and who has at least three prior convictions for violent felonies or serious drug offenses is subject to a mandatory minimum sentence of fifteen years imprisonment. 18 U.S.C. § 924(e)(1). Golden concedes that he has

two prior convictions for violent felonies, possession of a short-barreled shotgun and false imprisonment, but argues that the district court erred in determining that his prior convictions for failure to report to jail constitute violent felonies pursuant to § 924(e). He contends that the failure to report to jail does not contain as an element the use, attempted use, or threatened use of physical force against another person or otherwise present serious potential risk of physical injury to another person. Whether a prior offense constitutes a "violent felony" for purposes of sentencing is a question of law that we review *de novo. United States v. Wallace*, 326 F.3d 881, 886 (7th Cir. 2003).

Section 924(e)(2)(B) defines "violent felony" as any crime punishable by imprisonment exceeding one year that—

> (1) has an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is burglary, arson, or extortion, involves the use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

*Id.* (emphasis added).

Golden's prior convictions for felony failure to report to jail were pursuant to WIS. STAT. § 946.425(1m)(b).[1] There is no dispute that the use or threatened use of physical force are not elements of an offense under WIS. STAT. § 946.425(1m)(b). The Court therefore must consider whether the failure to report to jail "otherwise involves

---

[1] Under this statute, "[a]ny person who receives a stay of execution of a sentence of imprisonment of 10 or more days to a county jail under s. 973.15(8)(a) and who intentionally fails to report to the county jail as required under the sentence is guilty of a Class H felony." WIS. STAT. § 946.425(1m)(b) (2005).

conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

In making a risk determination, "the benchmark should be the possibility of violent confrontation, not whether one can postulate nonconfrontational hypothetical scenario." *United States v. Franklin*, 302 F.3d 722 at 723 (7th Cir. 2002) (quoting *United States v. Davis*, 16 F.3d 212, 217 (7th Cir. 1994)). Rather than examining the specific facts of each defendant's offense to determine whether that offense constitutes a violent felony, "sentencing courts take a categorical approach, looking to the statutory elements of the crime . . . ." *Id.* at 725 (holding that the crime of escape is a crime of violence for purposes of § 924(e) because escape involves a "serious potential risk of physical injury to another"). *See also Taylor v. United States*, 495 U.S. 575, 600-01, 110 S. Ct. 2143, 109 L.Ed.2d 607 (1990) (adopting a formal, categorical approach for determining whether a particular offense constitutes a "violent felony" under § 924(e)).

Under this categorical approach, the Court sees no principled distinction between the failure to report to jail and the failure to report back to a halfway house after being absent on a work release. *See United States v. Bryant*, 310 F.3d 550 at 553-54 (7th Cir. 2002). In *Bryant*, this Court held that the crime of escape, as a category, is a crime of violence for purposes of the federal sentencing guidelines. *Id.* at 554. After pleading guilty to four counts of making false statements in connection with the transfers of firearms in violation of 18 U.S.C. § 922(a)(6), the defendant received an elevated base offense level under the sentencing guidelines because of his previous conviction for a "crime of violence." The defendant had been convicted of the crime of "escape" for failing to return to a halfway house after receiving permission to be absent temporarily for work purposes. *Id.* The defendant was on the lam for ten days before being re-apprehended. He was charged with and

pleaded guilty to violating the federal scape statute, 18 U.S.C. § 751(a). *Id.*

On appeal, this Court rejected the defendant's argument that the Court should adopt a fact-specific approach to determine whether a particular offense constitutes a crime of violence under the sentencing guidelines, reasoning that this Court's decision in *Franklin* and the Supreme Court's decision in *Taylor* foreclosed that argument. *Id.* at 553-54 (citing *Franklin*, 302 F.3d at 724, *Taylor*, 495 U.S. at 601). Moreover, the Court explained, the defendant's "approach risks opening the courts to countless arguments as to whether a crime is actually an 'escape' or merely a 'failure to return.'" *Id.* at 554.

The same reasoning holds true in the instant matter. While Golden attempts to distinguish the failure to report to jail from escape by arguing that the failure to report to jail is a passive inaction rather than the deliberate action of escaping from jail, both offenses involve the same potential for a violent confrontation. In failing to report to jail, the potential for a violent confrontation arises between the defendant and law enforcement during the attempted capture. In escaping from jail or in failing to report back to a halfway house, the potential for a violent confrontation arises during the attempted recapture. Differentiating between capture and recapture serves no useful purpose. Both offenses also involve a defendant whose guilt has been adjudicated, who has received a sentence, and who knows what the future holds: incarceration. Following the required categorical approach for determining whether an offense is a "violent felony" for purposes of § 924(e), we find that the offense of failing to report to jail constitutes such a "violent felony." The district court properly applied the sentencing enhancement to Golden.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.

ROVNER, *Circuit Judge*, concurring.   I concur in my brother's very fine opinion. I agree that treating failure to report to jail as a violent felony is a logical extension of our earlier decision treating failure to return to a halfway house as a violent felony. *See United States v. Bryant*, 310 F.3d 550 (7th Cir. 2002). The risk to law enforcement is likely the same in capture as it is in recapture. Defense counsel relied largely on the difference between an active escape and a passive failure to report to demonstrate that the risks are not the same. There are many differences between those who escape and those who fail to report, but there are also many similarities. We assume for the purposes of this opinion that the similarities are greater than the differences and that both situations present a serious potential risk of physical injury to law enforcement or the public.

I write separately because, as a practical matter, we do not know the actual risks to law enforcement officers in recaptures following escapes (and in escapes, I include failures to return to halfway house custody) versus captures following failure to report to jail. The statute characterizes as a violent felony a crime that "is burglary of a dwelling, arson, or extortion, involves explosives, or otherwise involves conduct that presents a *serious* potential risk of physical injury to another." 18 U.S.C. §924(e)(2)(B) (emphasis added). I doubt that the failure to report for incarceration by its nature presents the same danger that escape

from custody does. In *Bryant*, we declined the defendant's invitation to reclassify his failure to return to halfway house custody as a "failure to return" rather than escape. Bryant was charged under an escape statute, which was appropriate because he was in a type of custody in the halfway house. We applied a categorical approach to Bryant's escape conviction and concluded that it posed the same risks as any other escape.

The failure to report reflects deliberate disregard of an order, but it is not clear to me that a defendant who fails to report on schedule is any more likely to resist attempts to take him into custody than someone who commits contempt of court, for example. Escape is in that regard different: the defendant has demonstrated not only a willingness to disobey an order, but also a specific inclination to resist or evade restraint, making it likely that the authorities will have to employ force in order to recapture him. The mere failure to report to custody in the first instance does not reflect that extra element. No doubt the defendant who chooses not to report for jail as ordered appreciates that the authorities will come looking for him; but that decision, unlawful as it is, does not necessarily or even probably signal the defendant's willingness to run or resist when a sheriff's deputy comes knocking on his door. There may well be some defendants in this situation who have no intention of going quietly, but we have no way of knowing how representative those individuals would be. The government has given us no statistics to support a conclusion that failure to report to jail presents a serious potential risk to the public or to the officers involved in the subsequent capture.

Because we use a categorical approach in making this determination, our decision will have a wide-ranging effect. As counsel for Golden pointed out, a person who has never committed a violent crime in her life but has failed to report to jail in Wisconsin for three shoplifting sentences exceed-

ing ten days each would face this enhancement as a violent felon. No other appellate court has considered whether failure to report to jail is a violent felony. Most circuits agree that all escapes, even those by stealth or those from halfway houses, are violent felonies, mainly because of the risks inherent in recapture. The Ninth Circuit has declined to apply our categorical approach to a failure to return to a halfway house. *See United States v. Piccolo*, 441 F.3d 1084 (9th Cir. 2006). Now that we have found that failure to report constitutes a violent felony, we are on the path to determining that comparable crimes, a probation violation, for example, might qualify as well. If statistics do not bear out the assumption that persons who fail to report pose a *serious* potential risk of physical harm to others, we may have to reconsider our approach.

WILLIAMS, *Circuit Judge*, dissenting.  Because I do not believe that "failure to report to jail" constitutes a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(ii), I respectfully dissent.

The panel's decision in this case is an outgrowth of our holding in *United States v. Franklin*, 302 F.3d 722, 724 (7th Cir. 2002), that all escapes constitute violent felonies because "[e]ven the most peaceful escape cannot eliminate the potential for violent conflict when the authorities attempt to recapture an escapee." Here, the panel opinion concludes that there can be no logical difference between capture and recapture. While it is a close question, I believe that we must draw a line between capture and recapture or risk exposing defendants to enhanced punishment under section 924 on the basis of virtually any felony. My view

that Wisconsin's "failure to report to jail" crime is not a violent felony under section 924 is supported by a close reading of the statute.

As Judge Bauer's opinion observes, the relevant portion of section 924 defines "violent felony" as one which "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The meaning of the final clause in section 924, beginning with "otherwise," is far from clear. However, we can deduce its meaning by calling upon an age-old canon of statutory construction, *ejusdem generis*, which instructs that the scope of an ambiguous term in a statute is limited by more precise terms with which it is listed. *See Tourdot v. Rockford Health Plans*, 439 F.3d 351, 353 (7th Cir. 2006) ("*Ejusdem generis* provides guidance on how to interpret language where meaning is not plain. This Latin phrase confines the scope of a general term to the nature of the preceding class or thing, unless a contrary intent is clearly shown."); *see also McBoyle v. United States*, 283 U.S. 25, 26 (1931) (Holmes, J.) ("[A]fter including automobile truck, automobile wagon and motor cycle, the words 'any other self-propelled vehicle not designed for running on rails' still indicate that a vehicle in the popular sense, that is a vehicle running on land is the theme. It is a vehicle that runs, not something, not commonly called a vehicle, that flies."). In *McBoyle*, Justice Holmes famously concluded that the words "any other self-propelled vehicle not designed for running on rails" did not include airplanes where the more specific words in the statute referred only to vehicles that ran on land. *See id.*

Here, it is worth asking if "failure to return to jail," as that crime is defined in Wisconsin, is like burglary, arson, extortion, or crimes involving the use of explosives. The

common thread between these crimes is that they all involve a "*serious* potential risk of physical injury to another." *See* 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). To add failure to return to jail to the list would contort the will of Congress into enhanced punishment when there is *any* risk of physical injury.

In *Davis*, we stated that "in determining whether an offense falls under the 'otherwise' clause, the benchmark should be the possibility of violent confrontation, not whether one can postulate a nonconfrontational hypothetical scenario*." United States v. Davis*, 16 F.3d 212, 217 (7th Cir. 1994). Although we used the word "possibility," the more appropriate term would have been "probability"— the probability of violent confrontation is the benchmark that best conforms with logic and Congressional intent. All crimes carry the *possibility* of violent confrontation—even the feeblest episode of shoplifting triggers the possibility that violent confrontation will ensue when a police officer attempts to apprehend the shoplifter. It seems unlikely, however, that Congress would have gone to the trouble of delimiting the reach of section 924 to "violent felonies" if it intended to subject even this crime to enhanced punishment for recidivism. Moreover, if Congress intended for the courts to examine the risk of physical injury in the abstract, it could have simply instructed the courts that "violent felonies" are all those involving "conduct that presents a serious potential risk of physical injury to another," but it did not. Instead, the legislature chose to provide a list of crimes that presumably pose a comparable risk of physical injury to others. The dissimilarity between crimes involving the use of explosives and failure to report to jail could not be more extreme.

Our prior opinions on the classification of escape crimes under section 924 do not constrain our decision here. The Wisconsin law that Golden was previously convicted of violating provides: "Any person who receives a stay of

execution of a sentence of imprisonment of 10 or more days to a county jail under s. 973.15(8)(a) and who intentionally fails to report to the county jail as required under the sentence is guilty of a Class H felony." Wis. Stat. § 946.425(1m)(b). As we explained in *Franklin*, the categorical approach mandated by *Taylor*[1] requires us to "look[ ] to the statutory elements of the crime, rather than the particular facts underlying the conviction." *See Franklin*, 302 F.3d at 723. In *Franklin*, the statutory elements of the escape crime at issue were "(a) the knowing and voluntary departure of a person (b) from lawful custody and (c) with intent to evade due course of justice." *Id.* (quoting *Miller v. State*, 492 So. 2d 978, 981 (Miss. 1986)). While these were the only elements necessary to secure a conviction under the Mississippi escape statute, the first subsection of that statute gives a glimpse into the minds of the drafters, as it punishes "[w]hoever escapes or attempts by force or violence to escape from any jail in which he is confined . . . ." *See* Miss. Code Ann. § 97-9-49. The important point is that the escape crime in *Franklin* punished intentional departure from custody, an act that usually requires physical force. This is likely the reason that the Mississippi legislature chose to punish first and foremost those who use force or violence to escape under § 97-9-49. Our other cases also involved statutes that punished active crimes posing a high risk of physical injury to another. *See, e.g.*, *United States v. Howze*, 343 F.3d 919, 921 (7th Cir. 2003) (finding that statute which proscribed "knowingly flee[ing] or attempt[ing] to elude any traffic officer by willful or wanton disregard of such signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians" was properly classified as a violent felony under 18 U.S.C. § 924(e)(2)(B)(ii)) (quoting Wis. Stat. § 346.04(3)); *United States v. Bryant*, 310 F.3d

---

[1] *Taylor v. United States*, 495 U.S. 575, 601 (1990).

550, 553 (7th Cir. 2002) (applying categorical approach to defendant's "failure to return"-type escape and finding that it constituted a crime of violence where the statute punished "escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility").

By contrast, Golden's prior offense, failure to report to jail, is largely a crime of omission. *Cf. United States v. Piccolo*, 441 F.3d 1084, 1088 (9th Cir. 2006) ("Those who leave without returning do not pose an automatic risk of danger and therefore do not categorically raise a serious potential risk of physical harm."); *United States v. Adkins*, 196 F.3d 1112, 1119 (10th Cir. 1999) (McKay, J., concurring) ("There is a quantum difference between the assumptions about the intrinsic danger of unauthorized departure from actual custody, as in this case, and of failure to return from authorized departure from actual custody."). No element of the Wisconsin statute at issue involves force or violence, or suggests the likelihood of physical injury. While it is possible that, eventually, some physical altercation could occur, as Judge Rovner points out in her concurrence, the government has not introduced any evidence indicating that failure to report is typically a violent crime. Regardless, if a failure to report ultimately results in a violent confrontation, the violator's record will likely contain a crime more appropriately suited to section 924's violent crime definition, such as assault or battery. Thus, I would not find that Section 924(e)(2)(B)(ii)'s definition of "violent felony" includes Golden's failure to report to jail felony.

By extending our violent felony jurisprudence to crimes such as failure to report to jail, we run the risk of compromising the very due process concerns that the Supreme Court addressed in *McBoyle*, where Justice Holmes wrote:

> Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals,

> **it is reasonable that a fair warning should be given to the world in language that the common world will understand**, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear. When a rule of conduct is laid down in words that evoke in the common mind only the picture of vehicles moving on land, the statute should not be extended to aircraft simply because it may seem to us that a similar policy applies, or upon the speculation that if the legislature had thought of it, very likely broader words would have been used.

*McBoyle*, 283 U.S. at 27 (emphasis added); *see also United States v. Lanier*, 520 U.S. 259, 265 (1997) (citing *McBoyle* for principle that due process requires fair warning "in language that the common world will understand"). No layman would anticipate that "failure to report to jail," as that crime is defined in Wisconsin, would trigger a recidivist statute that punishes those guilty of committing multiple violent felonies. While that fact is not dispositive in our inquiry, it should trigger some alarm with regard to the distance our interpretation of section 924 has traveled from "language that the common world" would understand. For these reasons, I respectfully dissent.

A true Copy:

       Teste:

                _____
                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*