# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1860

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RANDY G. MEHERG,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 11-CR-46-wmc-01—**William M. Conley**, *Chief Judge.*

ARGUED OCTOBER 30, 2012—DECIDED APRIL 8, 2013

Before BAUER, FLAUM, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* The facts underlying Randy Meherg's conviction are not at issue. When Meherg was arrested on an outstanding warrant, police discovered that moments earlier he had been carrying a firearm and ammunition. Meherg pleaded guilty to possessing a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). The Armed Career Criminal Act, 18 U.S.C. § 924(a) (ACCA)

defines an offender who has three earlier convictions for qualifying crimes as a career criminal and prescribes a mandatory minimum 15-year sentence for any such person. Qualifying crimes include "serious drug offenses"—manufacturing or delivering a controlled sentence where the maximum punishment is greater than ten years' imprisonment—and "crimes of violence"—crimes that either have as an element the use, attempted use, or threatened use of force; or, as relevant here, present a serious potential risk of physical injury. 18 U.S.C. §§ 922(e)(2)(A), 924(e).

The district court found that Meherg was a career criminal because his record included two Illinois state convictions for manufacture or delivery of 1-15 grams of cocaine (serious drug offenses because they are punishable by up to 15 years' imprisonment) and a conviction for aggravated stalking. The latter offense, the court found, has as an element the use or threatened use of force and in addition presents a serious potential risk of physical injury. The court imposed the mandatory minimum of 180 months' imprisonment as a sentence, and Meherg now appeals.

## I

We review *de novo* the district court's determination that Meherg qualifies for an armed career criminal enhancement under the ACCA. *United States v. Sykes*, 598 F.3d 334, 335 (7th Cir. 2010), *aff'd*, 131 S. Ct. 2267 (2011). Meherg begins by attacking the district court's reliance on the determination in his presentencing report (PSR)

that he was convicted of two "serious drug offenses" in 1989. Meherg contends that the government failed to establish that he was convicted of distributing between one and 15 grams of cocaine. He argues that two discrepancies between his conviction records and the applicable Illinois statute create doubt over the precise nature of the crimes of conviction. First, he notes that the conviction record refers to "Section 1401" of the 1985 Illinois Revised Statutes, "Chapter 56.5," instead of to "Paragraph 1401" of Chapter 56 ½. Second, the record refers to Paragraph B(2) instead of to Section 401(b)(2). Thus, the conviction records state that Meherg was convicted of violating "Chapter 56.5, *Sec.* 1401, *Para. B(2),*" but the statute criminalizing delivery of 1-15 grams of cocaine at the time was actually "Chapter 56 ½, *Paragraph 1401, Section 401(b)(2)*" of the Illinois Revised Statutes. (See 720 ILCS § 570/401 for the current codification of this law.)

A district court may rely on information contained in a PSR so long as the report is well-supported and appears reliable. *United States v. Heckel*, 570 F.3d 791, 795 (7th Cir. 2009); *United States v. Mustread,* 42 F.3d 1097, 1101-02 (7th Cir. 1994). A defendant may produce evidence that questions the reliability or correctness of the facts in the report, but he must offer more than a "bare denial" of the information. *Mustread,* 42 F.3d at 1102. Only when the defendant creates "real doubt" does the burden shift to the government to demonstrate the accuracy of the information. *United States v. Black*, 636 F.3d 893, 897 (7th Cir. 2011), *cert. denied*, 132 S. Ct. 1600 (2012).

In *Black* we addressed a similar challenge to a career offender determination. There, the defendant argued that the "handwritten abbreviation indicating the charge is impossible to decipher . . . [and] these documents cast doubt upon the correctness of the charges in the PSR." *Id.* This was not enough, we held, to create a real doubt about the accuracy of the PSR. Black never denied that he was actually convicted of the crimes charged; he argued only that it was *possible* that the conviction record was inaccurate. Our comment there is equally applicable here: "We see no reason for a defendant to submit evidence that is indirect to the issue when [the defendant] himself could have produced direct evidence by simply stating that he was not convicted of the crimes with which he was charged or that he was actually convicted of a lesser offense." *Id.*

Like Black, Meherg does not argue that he was not actually convicted of delivering or manufacturing 1-15 grams of cocaine. He merely states that, because the conviction documents are unclear, it is possible that he was convicted of a lesser offense. Meherg has not introduced any evidence, such as a plea colloquy or sentencing transcript, indicating that he was convicted of a crime different from the one charged. This means that the conviction records stand uncontradicted, and they adequately document the fact that Meherg was convicted of the crimes of delivering 1-15 grams of cocaine. The first pages of the indictments state that he is charged with "deliver[ing] controlled substance"; the handwritten conviction documents refer to the offense as "man/del" and include the notation "Ch. 56.5,

Sec. 1401, Par. B(2)." Chapter 56 ½, Paragraph 1401 is entitled "Manufacture and delivery unauthorized by Act—penalties," and the first section under that paragraph heading (Section 401) prohibits manufacturing and delivering a controlled substance. Subsection (b)(2) of Section 401 designates manufacture and delivery of 1-15 grams of cocaine as a Class 1 felony. There is no reason to infer that the court was referring to any provision other than Chapter 56 ½, Paragraph 1401. It is not as if the conviction documents referred to a section and paragraph that defined a different crime. Even though, as Meherg points out, there is no "Section" 1401 in Chapter 56-1/2 of the Illinois Revised Statutes, what we have here is at most a scrivener's error. Meherg was obviously able to discern the offense to which his conviction documents refer: he attached the correct statutory provision to his brief in order to show us the discrepancies.

The government also submitted a page, supposedly from the indictment, that specifically charges Meherg with delivering cocaine. Meherg argues that this random paper cannot support the court's conclusion, both because it was not a part of his criminal conviction record and because its authenticity is questionable, as it does not contain a case or page number. Since Meherg's conviction records are sufficient to support his ACCA enhancement, we need not, and do not, rely in any way on the questionable document.

**II**

Meherg also challenges the district court's conclusion that aggravated stalking qualifies as a crime of violence under the ACCA. For ACCA purposes, a crime of violence "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of injury to another." 18 U.S.C. § 924(e). The Illinois crime of stalking is committed when a person "knowingly and without lawful justification . . . follows another person or places the person under surveillance . . . and . . . places that person in reasonable apprehension of immediate or future bodily harm, sexual assault, confinement or restraint." 720 ILCS § 5/12-7.3(a-3). The Illinois crime of aggravated stalking is committed when a person commits stalking and "confines or restrains the victim." 720 ILCS § 5/12-7.4(a)(2). Meherg argues that aggravated stalking neither meets the "elements" test of the statute nor falls under the residual clause by presenting a serious potential risk of physical injury.

We agree with Meherg on the first point. Indeed, the government now concedes that the aggravated stalking offense does not have as one of its elements the use of force and that a person could violate the statute without using force. For instance, the perpetrator could coerce a victim to consent to taking a ride in a car, thereby confining the victim without force. We find this concession to be well taken, and thus move on to consideration of the residual clause.

In deciding whether an offense qualifies as a crime of violence under the residual clause, we look to the manner in which the offense ordinarily is committed. We assess whether the crime involves conduct that creates a risk of physical injury that is "similar in risk to the listed crimes." *Sykes,* 131 S. Ct. at 2276; *United States v. Capler*, 636 F.3d 321, 323 (7th Cir. 2011); *United States v. Sonnenberg,* 628 F.3d 361, 364 (7th Cir. 2010). The approach is a categorical one: instead of looking to the conduct involved in a particular case, we ask "whether the *elements of the offense* ordinarily involve conduct that falls within the scope of the residual clause." *Capler*, 636 F.3d at 327 (emphasis in original).

We already have concluded that the Illinois crime of unlawful restraint (defined as "knowingly without legal authority detain[ing] another") is a crime of violence, even though it does not specify whether physical force must be used in detaining the victim. *Id.; United States v. Wallace*, 326 F.3d 881 (7th Cir. 2003). We also found Wisconsin's false imprisonment offense to be a crime of violence, even though the crime could be committed through fraudulently obtained consent. *United States v. Billups*, 536 F.3d 574, 579 (7th Cir. 2008). We explained that "a situation where one person restrains another against his or her will presents a serious potential risk of physical injury, whether it be in the initial restraint or the possible resulting confrontation between assailant and victim if the victim attempts to leave." *Wallace,* 326 F.3d at 887 (internal quotation marks omitted).

In both *Wallace* and *Billups*, we rejected the argument that the crime should not qualify because one could conceivably confine a victim without the risk of violent conduct. *Billups*, 536 F.3d at 579. We explained that even if a victim's restraint is accomplished without violence, risk of physical injury will likely arise from the victim's efforts to escape confinement. *Id.* at 580. We also emphasized that since "the 'serious potential risk' language . . . is indicative of probability, rather than inevitability, . . . an offense need not pose a serious risk of harm in *every* conceivable factual manifestation in order to constitute a crime of violence." *Id.*; *Wallace*, 326 F.3d at 887 ("[T]he benchmark should be the possibility of violent confrontation, not whether one can postulate a nonconfrontational hypothetical scenario.").

*Wallace* and *Billups* compel us to reject Meherg's argument that aggravated stalking is categorically not a crime of violence because it does not require the victim's non-consent. (For instance, Meherg argues that one might commit aggravated stalking by taking the victim for a ride in a locked car that they voluntarily enter.) In reaching this conclusion, we emphasize that we are addressing aggravated stalking, not the ordinary crime of stalking under Illinois law. Aggravated stalking is ordinary stalking—placing the victim in fear of immediate or future bodily harm, sexual assault, confinement or restraint—*plus* actually confining or restraining the victim. Therefore, the offense that Meherg committed requires not only that the victim *fear* confinement or restraint, but that the victim *actually* be confined or restrained. In addition, since even ordinary stalking

(and thus also the aggravated version) requires that the person act "knowingly and without lawful justification," 720 ILCS 5/12-7.3(a), we are satisfied that this is a crime with a *mens rea* of knowing or purposeful conduct. This requires it to be treated in the same way as the unlawful restraint and false imprisonment offenses in *Wallace* and *Billups*. See also *Sykes*, 131 S. Ct. at 2276.

Because the crime of aggravated stalking requires confinement or restraint of the victim, we conclude that it presents a serious potential risk of physical injury, just like the crimes of unlawful restraint, false imprisonment, and those enumerated in Section 924(e)(2)(B)(ii). Our holding is consistent with that of the Fourth Circuit in *United States v. Seay*, 553 F.3d 732, 738 (4th Cir. 2009) ("North Carolina's felony stalking statute . . . involves conduct that presents a serious potential risk of physical injury to another.").

## III

The ACCA drastically increases punishment for those deemed armed career criminals. A 15-year mandatory minimum is no trifling matter, and we have therefore taken care in these cases "[t]o avoid collapsing the distinction between violent and non-violent offenses." *Flores v. Ashcroft*, 350 F.3d 666, 672 (7th Cir. 2003). We also have attempted, as the statute commands, to reserve this designation for offenses in which the risk of physical harm is serious, even if not always realized. We conclude that Illinois's crime of aggravated stalking

meets this demanding test. We therefore AFFIRM the judgment of the district court.