In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-2856

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DOMINIC MILLER,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 15 CR 30 — **Barbara B. Crabb**, *Judge.*

ARGUED FEBRUARY 17, 2016 — DECIDED AUGUST 19, 2016

Before BAUER, FLAUM, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* In late 2014, Defendant Dominic
Miller and Amy Wagner used and sold methamphetamine to-
gether in northwestern Wisconsin. After law enforcement
learned of the couple's illicit activity, Miller pled guilty to pos-
sessing methamphetamine with the intent to distribute it. The
district judge found that Miller and Wagner were jointly en-

gaged in the distribution of between 500 grams and 1.5 kilograms of methamphetamine and sentenced Miller to eight years in prison.

On appeal, Miller argues that the district judge's drug-quantity finding was erroneous, principally on the ground that he sold only a small portion of the drugs in question. However, Miller's relevant conduct includes not only the sales he directly made himself, but also the drug sales that Wagner foreseeably made in furtherance of their joint distribution scheme. Given this fact, there is no genuine dispute that Miller's relevant conduct involved between 500 grams and 1.5 kilograms.

Miller also claims that his eight-year sentence is substantively unreasonable because he is simply a drug addict in need of rehabilitative services. But the district judge adequately explained why Miller's sentence was necessary in light of his history of drug use *and drug sales*, and in any case, he has failed to overcome the presumption that his below-Guidelines sentence is reasonable. So we affirm the district court's judgment.

## I.  BACKGROUND

Dominic Miller and Amy Wagner met in northwestern Wisconsin sometime around September 2014. They began dating, moved into an apartment together, and began using and selling methamphetamine. During this time, the couple's relationship was not without issues. Specifically, Wagner suspected that Miller was unfaithful, and installed a webcam in the couple's bedroom to record Miller's actions while she was away.

In November 2014, a confidential informant purchased methamphetamine from Wagner on two separate occasions. Law enforcement later obtained a search warrant for Wagner and Miller's apartment and found small quantities of methamphetamine and LSD, as well as various drug paraphernalia. Wagner was arrested, and while in police custody, she admitted to using and selling methamphetamine and informed law enforcement that her home computer contained a number of videos that her webcam had captured. Law enforcement obtained the computer and the videos, which captured several apparent drug transactions involving Wagner, Miller, and others.

Miller was later charged with distributing methamphetamine under 21 U.S.C. § 841(a)(1); possessing more than 50 grams of methamphetamine with intent to distribute under 21 U.S.C. § 841(a)(1); and maintaining a place for the purpose of distributing methamphetamine under 21 U.S.C. § 856(a)(1). Miller pleaded guilty to the possession charge. In its initial presentence report ("initial PSR"), the probation office found that Miller and Wagner were engaged in a jointly undertaken criminal activity, and that as a result Miller was responsible for distributing between 1.5 kilograms and 5.0 kilograms of methamphetamine. Miller filed an objection to the initial PSR, arguing that his relevant conduct should only involve his activities after September 2014. Miller did not, however, object to the conclusion that the drug distribution was a joint undertaking. In response, the office prepared a revised presentence report ("revised PSR") with a reduced drug-quantity range of 500 grams to 1.5 kilograms.

At Miller's sentencing hearing, Wagner testified about how she and Miller coordinated their drug-distribution efforts. Wagner explained that she typically purchased between four and six ounces of methamphetamine every couple of days during the seven weeks she and Miller were dating. She added that Miller accompanied her to some (but not all) of the purchase meetings, that she typically sold most of the methamphetamine to one of her customers, and that she and Miller divvied up and sold the remaining amount to their respective customers, some of whom overlapped. In addition, Wagner stated that she and Miller weighed, packaged, and sold methamphetamine in their shared apartment, and that she and Miller combined their sales proceeds to pay the rent and purchase additional drugs. Later on in the hearing, Miller's attorney stated that he believed Wagner's testimony was truthful.

The district judge found that Miller was responsible for between 500 grams and 1.5 kilograms of methamphetamine, explaining:

> I think that the probation office was correct in determining that Mr. Miller's relevant conduct involved at least 500 grams but less than 1.5 kilograms of methamphetamine for the period from late September 2014 through November of 2014, which is when he and Ms. Wagner were obtaining large amounts of methamphetamine, probably as much as 3 to 5 pounds. I think it's very possible that there was more methamphetamine being distributed, but I'm convinced that defendant has not shown that his relevant conduct involved less than 500 grams of metham-

phetamine. So that's the amount that I'm rely-
ing on in the — that was proposed by the pro-
bation office in its revised report.

The district judge sentenced Miller to 96 months' imprison-
ment, below the Guidelines' range of 100 to 125 months. In
doing so, the judge referenced Miller's difficult upbringing,
employment history, prior incarceration, and history of using
and selling methamphetamine. This appeal followed.

## II.  ANALYSIS

### A.  No Clear Error in Finding that Relevant Conduct In-
volved Between 500 Grams and 1.5 Kilograms of Meth-
amphetamine

On appeal, Miller contends that the district judge used an
incorrect drug-quantity range when calculating his sentence
under the Guidelines. We review the district court's interpre-
tation of the Guidelines de novo, and review for clear error
the factual determinations underlying the district court's ap-
plication of the Guidelines. *United States v. Harper*, 766 F.3d
741, 744 (7th Cir. 2014).

We have repeatedly observed that "determining drug
quantities attributable to defendants is not an exact science."
*United States v. Austin*, 806 F.3d 425, 431 (7th Cir. 2015) (cita-
tion and internal quotation marks omitted). Nevertheless, a
drug-quantity estimate must be "based on evidence pos-
sessing a sufficient indicia of reliability and not nebulous eye-
balling." *United States v. Durham*, 211 F.3d 437, 444 (7th Cir.
2000); *see also* U.S.S.G. § 6A1.3(a). We have encouraged district
courts to "err on the side of caution" and consider the more
conservative estimate when two or more plausible estimates
exist. *United States v. Bozovich*, 782 F.3d 814, 818 (7th Cir. 2015)

(citations and internal quotation marks omitted). However, we will reverse a drug-quantity finding "only if a review of the record leaves us with a 'firm and definite conviction that a mistake has been made.'" *United States v. Cooper*, 767 F.3d 721, 730 (7th Cir. 2014) (quoting *United States v. Adams*, 746 F.3d 734, 739–40 (7th Cir. 2014)).

We conclude that the district judge did not err in finding that Miller's relevant conduct included sales of between 500 grams and 1.5 kilograms of methamphetamine. Following her arrest, Wagner told law enforcement officials that she and Miller distributed approximately three to five pounds (or 1.36 to 2.27 kilograms) of methamphetamine between September and November 2014. That is consistent with Wagner's testimony at the sentencing hearing, where she said that she typically obtained four to six ounces (or 113 to 170 grams) of methamphetamine "every couple [of] days" for seven weeks. That adds up to 2.83 to 4.25 kilograms if the purchases occurred every other day, and 1.93 to 2.89 kilograms if the purchases occurred every third day. In addition, the revised PSR identified nearly a dozen individuals who corroborated the nature and scope of Miller and Wagner's distribution activities.

Miller attacks the district judge's finding on several grounds, arguing first that the finding was based on inaccurate and unreliable information supplied by Wagner. According to Miller, the district judge should not have credited Wagner's statements and testimony because Wagner was a criminal with a motivation to lie. But Miller fails to substantiate this conclusory assertion, which is unsurprising given the fact that inflating the joint enterprise's drug quantity would have been *against* Wagner's penal interest. And at the sentencing hearing, Miller's attorney acknowledged without prompting that

he believed Wagner had testified truthfully. Miller also criticizes Wagner for making statements to law enforcement that were inconsistent with her testimony at the sentencing hearing. Although Wagner was inconsistent about whether she or Miller distributed the majority of the drugs they obtained, she consistently indicated that she and Miller collectively distributed at least 500 grams of methamphetamine. Indeed, Miller's attorney conceded at oral argument that Wagner and Miller together distributed more than 500 grams of methamphetamine.

In an attempt to deflect attention away from this 500-gram threshold, Miller emphasizes that he himself sold only a portion of the drugs that he and Wagner obtained. But this overlooks the district judge's finding that Wagner and Miller were engaged in a *jointly* undertaken criminal activity, which made Miller responsible for *all acts* within the scope of, in furtherance of, and reasonably foreseeable in connection with that activity. U.S.S.G. § 1B1.3(a)(1)(B); *see also United States v. Davison*, 761 F.3d 683, 685 (7th Cir. 2014).

There is ample evidence in the record that supports that finding. At Miller's sentencing hearing, for example, Wagner stated that: (i) she and Miller sometimes coordinated their drug purchases; (ii) Miller sometimes traveled with her when she picked up methamphetamine from her sources or delivered it to her customers; (iii) Miller sometimes weighed and packaged methamphetamine for sale; (iv) she and Miller had at least five shared customers; (v) after she received phone calls asking for methamphetamine, she sometimes sent Miller out to make the sale; and (vi) she and Miller combined their sales proceeds to purchase additional drugs. In addition, Miller's attorney conceded at the hearing that Wagner and Miller

"were a group" and that Miller "was involved in some distri-
bution." *See United States v. Salem*, 657 F.3d 560, 564 (7th Cir.
2011) (concluding that district judge did not err in finding ex-
istence of jointly undertaken criminal activity where "there is
a single scheme, similarities in modus operandi, coordination
of activities among co-schemers, and sharing of resources");
*United States v. Adeniji*, 221 F.3d 1020, 1028 (7th Cir. 2000) (con-
cluding that record adequately supported joint undertaking
finding since there was "a single scheme to defraud" that
lasted approximately eight weeks and involved multiple con-
versations between the participants and sharing of proceeds).

Second, Miller contends that the district judge adopted the
revised PSR's recommended drug-quantity range without ar-
ticulating any reasons for doing so. This argument ignores the
substance of Wagner's testimony at the hearing and how that
testimony compares to her earlier statements about drug
quantity. *Cf. United States v. Longstreet*, 567 F.3d 911, 928 (7th
Cir. 2009) ("The district court … is not limited to reviewing
the PSR when calculating drug quantity; what controls the
analysis is the 'entire evidence' before the district court." (ci-
tation and internal quotation marks omitted)).

As discussed above, Wagner's testimony at the hearing in-
dicated that she obtained approximately 1.93 to 4.25 kilo-
grams (or 4.25 to 9.37 pounds) of methamphetamine, and Mil-
ler's attorney conceded at the hearing that Wagner had testi-
fied truthfully. Critically, this range was consistent with Wag-
ner's earlier statement to law enforcement—which was refer-
enced not only in the revised PSR *but also by the district judge*
at the sentencing hearing—that Wagner and Miller had ob-
tained approximately three to five pounds of methampheta-
mine. Miller has never directly contested that statement. So it

was not necessary for the district judge to explain with greater detail why the revised PSR's recommended range was adequately supported. *See United States v. Ali*, 619 F.3d 713, 719 (7th Cir. 2010) ("[A] district court may accept any undisputed portion of the PSR as a finding of fact."); *United States v. Burke*, 148 F.3d 832, 835 (7th Cir. 1998) ("Provided that the facts contained in a PSR bear sufficient indicia of reliability to support their probable accuracy, the district court may adopt them as support for its findings and conclusions regarding the quantity of drugs attributable to a defendant." (quoting *United States v. Edwards*, 115 F.3d 1322, 1327 (7th Cir. 1997))).

Third, Miller claims that the district judge improperly placed the burden of persuasion on Miller regarding the drug quantity. "A district court may rely on information contained in a PSR so long as the report is well-supported and appears reliable." *United States v. Meherg*, 714 F.3d 457, 459 (7th Cir. 2013) (citations omitted). When a district judge relies on the report in sentencing the defendant, the defendant bears the burden of showing that the report is unreliable or inaccurate. *United States v. Salinas*, 365 F.3d 582, 587 (7th Cir. 2004). "Only when the defendant creates 'real doubt' does the burden shift to the government to demonstrate the accuracy of the information." *Meherg*, 714 F.3d at 459 (citation omitted).

We find that the district judge did not err in her burden-shifting analysis. The judge began by stating that "the probation office was correct in determining that Mr. Miller's relevant conduct involved at least 500 grams but less than 1.5 kilograms." She referenced the relevant time period and the three-to-five pound range that Wagner had noted in her interview with law enforcement. *Only after that* did the district judge say she was "convinced that defendant has not shown

that his relevant conduct involved less than 500 grams." In short, the judge found that (i) the government satisfied its initial burden regarding the reliability of the revised PSR's drug-quantity determination, and (ii) Miller did not satisfy his burden when it shifted to him. Miller argues that he did in fact satisfy his burden, but we disagree. Miller emphasizes that in his rebuttal to the initial PSR, he demonstrated that he did not purchase and sell most of the methamphetamine by himself. As noted above, however, that potential fact is irrelevant since Miller and Wagner were jointly engaged in a criminal activity.

Fourth and finally, Miller argues that he was denied due process at the hearing because he lacked "any meaningful opportunity to rebut the evidence presented [due to] the court's disinterested treatment of the counterevidence." Not so. Miller filed objections to the original PSR, cross-examined Wagner at the hearing, but declined the opportunity to call his own witnesses. In sum, Miller has failed to show that the district judge clearly erred in finding that Miller's relevant conduct involved the sale of between 500 grams and 1.5 kilograms of methamphetamine.

### B.  Sentence Not Substantively Unreasonable

"A sentence is reasonable if the district court gives meaningful consideration to the factors enumerated in 18 U.S.C. § 3553(a) … and arrives at a sentence that is objectively reasonable in light of the statutory factors and the individual circumstances of the case." *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008). The factors enumerated in § 3553(a) include the nature and circumstances of the offense; the defendant's history and characteristics; the need for the sentence imposed to reflect the seriousness of the offense, deter criminal

conduct, protect the public, and provide the defendant with needed educational or vocational training; the kinds of sentences available; the need to avoid unwanted sentencing disparities; and the need to provide restitution to victims. Rather than discussing each factor in "checklist fashion," a district judge need only discuss the factors in the "form of an adequate statement of the judge's reasons." *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005). We review the substantive reasonableness of a sentence under "a deferential, abuse of discretion standard with the presumption that a sentence within or below the guidelines range is reasonable." *United States v. Boroczk*, 705 F.3d 616, 623 (7th Cir. 2013).

Miller claims that his sentence is substantively unreasonable because the district judge "provided little insight into how it was that she felt a 96 month stay in prison, for a methamphetamine addict, would be the least means necessary to meet any of the goals set out in 18 U.S.C. § 3553." As an initial matter, we observe that Miller may have waived this argument, since it essentially amounts to a mere two sentences in his brief and is not supported by a single relevant case citation. *See C & N Corp. v. Gregory Kane & Ill. River Winery, Inc.*, 756 F.3d 1024, 1026 (7th Cir. 2014) ("Arguments that are 'underdeveloped, conclusory, or unsupported by law' are waived on appeal." (quoting *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012))).

Even assuming Miller did not waive his reasonableness argument, the argument reflects a gross misunderstanding of the district judge's sentencing rationale. The judge discussed at length (i) Miller's continued distribution of methamphetamine in spite of two distribution-related charges in 2008 and 2013; (ii) Miller's inability to remain employed and sober after

returning to Wisconsin from Maine in late 2013; (iii) Miller's "deep" addiction to methamphetamine and daily use of the drug over the prior several years; (iv) Miller's introduction of "large quantities of methamphetamine into northwestern Wisconsin"; (v) the need for Miller to "get out of th[e] routine" of associating with fellow drug users and sellers; and (vi) the need to "hold [Miller] accountable" for his actions and "protect the community." The judge also referenced a number of factors in Miller's favor, including his difficult upbringing, his learning disabilities and lack of education, his two minor children, and his willingness to participate in substance abuse counseling. Miller clearly has failed to overcome the presumptive reasonableness of his below-Guidelines sentence. And since he has failed to demonstrate that the district judge improperly calculated the applicable Guidelines range, his procedural error claim also lacks merit.

### III. CONCLUSION

The district court's judgment is AFFIRMED.