In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1721

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WAYNER D. BLACK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 3:09-cr-00108-bbc-1—**Barbara B. Crabb,** *Judge.*

ARGUED DECEMBER 1, 2010—DECIDED MARCH 7, 2011

Before BAUER and POSNER, *Circuit Judges,* and
PALLMEYER, *District Judge.**

BAUER, *Circuit Judge.* Defendant-appellant Wayner D.
Black pleaded guilty to bank robbery by use of a
dangerous weapon in violation of 18 U.S.C. § 2113(a)
and (d). The district court, guided by recommendations
in the presentence investigation report ("PSR"), applied

---

\* The Honorable Rebecca R. Pallmeyer, United States District
Court for the Northern District of Illinois, sitting by designation.

several sentence enhancements and sentenced Black to 262 months' imprisonment. On appeal, Black challenges his career offender enhancement, physical restraint enhancement, and denial of an acceptance of responsibility adjustment. For the following reasons, we affirm the district court's enhancement findings and sentence.

## I. BACKGROUND

On July 24, 2009, defendant-appellant Black and three accomplices—Marty Taylor, Arlandis Issac, and Larry Price—each wearing a mask and wielding a firearm, robbed the Amcore Bank of Madison, Wisconsin. During the robbery, Issac forced a bank teller at gunpoint to move to various places in the bank, and, at some point, forcefully pushed his gun to the back of the teller's head, causing minor injuries.

Black was arrested on July 30, 2009 after one of his accomplices made statements implicating him. On August 6, 2009, Black was charged in a two-count indictment with bank robbery by use of a dangerous weapon, in violation of 18 U.S.C. § 2113(a) and (d) (Count One), and with brandishing a firearm during and in connection with a crime, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count 2).

Black executed a plea agreement in which he agreed to plead guilty to Count One and the government agreed to move to dismiss Count Two. The probation department prepared a PSR, which determined that Black's base offense level was 20. It also made the fol-

lowing recommendations: (1) a one-level enhancement for taking more than $10,000 but less than $50,000; (2) a two-level enhancement for taking the property of a financial institution; (3) a six-level enhancement for using a firearm during the offense; (4) a two-level enhancement for physical restraint of the teller; (5) a two-level enhancement for bodily injury to the teller; and (6) a two-level enhancement for obstruction of justice. The obstructive conduct consisted of Black asking his girlfriend to dispose of the boots he wore during the robbery and attempting to fabricate an alibi. Finally, the PSR identified Black as a career offender based on the present felony conviction for a crime of violence plus three prior felony convictions for controlled substance offenses in Cook County, Illinois. The PSR relied on arrest reports, charging documents, orders, docket sheets, and certified statements of conviction and found that Black had been convicted of possession with intent to deliver cannabis in case number 1999-CR-09960, possession of a controlled substance with intent to deliver in case number 1999-CR-27233, and possession of a controlled substance with intent to deliver in case number 2000-CR-11400.

Black filed objections to the PSR, contesting the enhancement for physical restraint, a portion of the obstruction of justice enhancement, and the finding that he was a career offender. Black also argued that he should receive a reduction for acceptance of responsibility because he agreed to plead guilty and his case presented "extraordinary circumstances."

After a sentencing hearing, the district court judge adopted the majority of the recommendations in the

PSR and made the following findings: (1) Black's base offense level was 20; (2) a six-level enhancement applied because Black and the other robbers were armed during the offense; (3) a two-level enhancement applied because the teller was physically restrained; (4) a one-level enhancement applied because the defendant stole more than $10,000 but less than $50,000; (5) a two-level enhancement applied because of Black's willful attempt to obstruct justice; (6) a one-level enhancement applied because Black was a career offender; and (7) Black did not qualify for a three-level downward adjustment for acceptance of responsibility.

The judge sentenced Black to 262 months in prison. Black appeals the findings regarding the career offender enhancement, the physical restraint enhancement, and the acceptance of responsibility rejection.

## II.  DISCUSSION

### A.  Career Offender Status

Black primarily argues that the district court erred in classifying him as a career offender because there was insufficient evidence to establish that his prior convictions were qualifying offenses. We review de novo the district court's decision to classify Black as a career offender. *United States v. Kindle*, 453 F.3d 438, 440 (7th Cir. 2006).

A defendant is classified as a career offender under the Sentencing Guidelines and subject to an increased

offense level if he is at least eighteen years old at the time of the offense of conviction, the offense of conviction is a crime of violence or a controlled substance offense, and the defendant has at least two prior convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1 (2002).

Black maintains that he produced evidence that called into question the reliability of the information in the PSR, the document upon which the district judge relied in determining his career offender status, and therefore the district court erred in applying the career offender enhancement. A district court may rely on information contained in a PSR so long as the report is well-supported and appears reliable. *United States v. Heckel*, 570 F.3d 791, 795 (7th Cir. 2009); *United States v. Mustread*, 42 F.3d 1097, 1101-02 (7th Cir. 1994). A defendant may produce evidence that questions the reliability or correctness of the facts in the report, but he must do so beyond a "bare denial" of the information. *Mustread*, 42 F.3d at 1102. Only when the defendant creates "real doubt" does the burden then shift to the government to demonstrate the accuracy of the information. *United States v. Moreno-Padilla*, 602 F.3d 802, 809 (7th Cir. 2010).

Black admits that his prior conviction in case number 2000-CR-11400 qualifies, but disputes his two other prior convictions—case number 1999-CR-09960 and case number 1999-CR-27233—at least one of which must qualify as a controlled substance offense to classify Black as a career offender. In his initial objection to the PSR and continuing through his sentencing hearing,

Black produced signed orders for each of the two offenses at issue. He argues that the ambiguities in those documents, namely illegible handwriting, call into question the accuracy of the PSR. Black asserts that the handwritten abbreviation indicating the charge in the order for case number 1999-CR-09960 is impossible to decipher and that the same is true for the records in case number 1999-CR-27233. Black maintains that producing these documents satisfied his requirement of casting doubt upon the correctness of the charges in the PSR and that the burden then shifted to the government to demonstrate the accuracy of the PSR, which he claims it failed to do.

We do not believe that Black ever created a real doubt as to the accuracy of the information in the PSR. Black states in his brief that the ambiguity in the orders leaves open "the possibility" that he pleaded guilty to lesser offenses that would not qualify as controlled substances offenses under the Guidelines, but at no point did Black ever allege that he was not convicted of the crimes with which he was charged. Black's unwillingness to testify that he was not convicted of controlled substance offenses while silently hiding behind "unclear hand-writing" is suspect. We see no reason for a defendant to submit evidence that is indirect to the issue when Black himself could have produced direct evidence by simply stating that he was not convicted of the crimes with which he was charged or that he was actually convicted of a lesser offense. Black's evasiveness fails to meet the more than a "bare denial" requirement needed to shift the burden back to the government, and we

need not address Black's arguments regarding documents presented by the government to demonstrate the accuracy of the PSR.

Black also argues that the district court erroneously considered arrest reports and other documents cited in the PSR when classifying him as a career offender. As an initial matter, we find that Black did not waive this objection below. Waiver is the intentional relinquishment and abandonment of an argument. *United States v. Ortiz*, 431 F.3d 1035, 1038 (7th Cir. 2005). While Black may not have fully developed nor articulately presented the exact argument below, he did raise the issue, citing to relevant authority in his sentencing memorandum and attaching pertinent documents. He thus did not intentionally forego the argument.

Nonetheless, Black has not convinced us that the district court erred. Courts are required to take a categorical approach in analyzing prior convictions, meaning that a court is generally limited to considering the fact of conviction and the statutory elements of the offense when determining whether prior convictions classify the defendant as a career offender.[1] A district court is therefore limited to examining "the statutory definition,

---

[1] *Shepard v. United States*, 544 U.S. 13, 17 (2005) (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990)). Though *Shepard*'s holding applied to the Armed Career Criminals Act and crimes of violence, we have extended this holding to the Guidelines' career offender provision. *United States v. McGee*, 408 F.3d 966, 988 (7th Cir. 2005).

charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding made by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16. A district court may not rely on facts about the crime of conviction from other sources when making an enhancement determination, and it may not rely on police reports. *Shepard*, 544 U.S. at 16; *United States v. Thigpen*, 456 F.3d 766, 770 (7th Cir. 2006).

Black claims that the district court did not use the categorical approach in analyzing his prior convictions because the district court relied on the PSR, which itself relied upon arrest reports and other background documents. We addressed this issue in *United States v. Thigpen*, a case that Black unsuccessfully attempts to distinguish from his own. To determine whether the defendant in *Thigpen* qualified as a career offender, the district court similarly considered the defendant's PSR, which relied on police reports and other background documents. *Thigpen*, 456 F.3d at 770. We concluded that each of the defendant's prior crimes of violence or controlled substances offenses qualified on its face for a career offender enhancement and stated that "[w]hile the PSR certainly contained more information than merely the crimes of conviction, this would only be a problem if the district court used these facts to establish a crime of violence or controlled substance offense." *Id*.

The fact that Black's PSR references underlying documents, such as arrest reports, does not create a *Shepard*

problem because each of Black's prior controlled substance offenses qualifies him for career offender status on its face. A controlled substance offense is defined in the Guidelines as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b) (2009). Black had three prior convictions for possession of a controlled substance with intent to deliver. A *Shepard* problem only arises when a district court relies on facts in underlying documents to establish a crime of violence or controlled substance offense. We require courts to use a categorical approach because resolving a factual dispute "would require a trial within the sentencing hearing and if the result was to increase the maximum punishment of the defendant [it] would infringe his constitutional right to trial by jury." *United States v. Aviles-Solarzano*, 623 F.3d 470, 473 (7th Cir. 2010). A proper analysis occurs when the court considers "whether the *elements of the offense* are of the type . . . without inquiring into the specific conduct of th[e] particular offender*." United States v. Woods*, 576 F.3d 400, 403 (7th Cir. 2009) (quoting *James v. United States*, 550 U.S. 192, 202 (2007)). This is exactly what the district court did in Black's case.

Black attempts to argue that the district court should not have attempted a categorical approach as the court did in *Thigpen* because Black asserted that his convic-

tions were unclear. He argues that this dispute required the court to look at underlying documents to resolve the ambiguity and created a *Shepard* problem, and he encourages the court to follow a modified categorical approach. The modified categorical analysis, likewise derived from *Shepard*, permits a court to look at other documents in limited cases when a defendant's conviction is unclear only because the crime is defined in a divisible statute. *Shepard*, 544 U.S. at 16-17; *United States v. Smith*, 544 F.3d 781, 786 (7th Cir. 2008) ("When a statute encompasses multiple categories of offense conduct—some of which would constitute a violent felony and some of which would not—we may expand our inquiry into a limited range of additional material in order to determine whether the jury actually convicted the defendant of (or, in the case of a guilty plea, the defendant expressly admitted to) violating a portion of the statute that constitutes a violent felony."); *see United States v. Spells*, 537 F.3d 743, 749 (7th Cir. 2008). But the controlled substance statutes under which Black was convicted are not divisible. The district court thus could, and did, apply a categorical approach. For these reasons, we find that the district court properly applied the career offender enhancement.

## B.  Physical Restraint of a Victim

We review the question of whether the bank teller was physically restrained, a matter of interpretation of the Sentencing Guidelines, de novo. *United States v. Eubanks*, 593 F.3d 645, 649 (7th Cir. 2010). Any factual

findings regarding the enhancement are reviewed for clear error. *Id.*

Section 2B3.1(b)(4) of the Guidelines applies a sentencing enhancement if a person is "physically restrained to facilitate the commission of the offense or to facilitate escape." U.S.S.G. § 2B3.1(b)(4) (2010). The term "physically restrained" is defined as "the forcible restraint of the victim such as being tied, bound, or locked up." U.S.S.G. § 1B1.1 cmt. n.1(K) (2010).

Black argues that Issac's conduct—ordering and leading the bank teller around at gunpoint—did not constitute physical restraint because it is not similar enough to the examples enumerated in the Guidelines.[2] Black maintains the court should have followed the principle derived from *Begay v. United States* that when Congress or the Sentencing Commission have defined a term by way of a list of examples, those examples serve as a limitation on the definition. *Begay v. United States*, 553 U.S. 137, 143 (2008). Black thus argues that conduct does not constitute physical restraint unless it is relatively identical to the examples listed in defining the term, specifically tying, binding, or locking up the victim. In fact, we explicitly rejected the same argument from Black's accomplice Marty Taylor in *United States v.*

---

[2] Black's physical restraint enhancement is based on Issac's conduct, which is also relevant conduct of the defendant, and is not at issue on appeal. *See* U.S.S.G. § 1B1.3(a)(1)(B) (2010).

*Taylor*,[3] a decision that Black urges us to now overrule. We decline to do so. While a statutory list of examples can indicate the statute's intended scope, the fundamental characteristic of the physical restraint enhancement is to punish one for depriving a person of his freedom of physical movement, which can be accomplished by means beyond those statutory examples. *See Taylor*, 620 F.3d at 814. We have found that "[w]hether a pointed gun is used to move a person into an unlocked room and keep him there, or used to move a person from one part of the robbery scene to another, the person's freedom of movement is restrained as effectively as by shoving or dragging him into a room and locking the door." *Id*. at 815 (citing *United States v. Carter*, 410 F.3d 942, 954 (7th Cir. 2005)). Today we reaffirm *United States v. Taylor* and again find that Black's accomplice's actions during the robbery constitute physical restraint. We affirm Black's physical restraint enhancement.

### C. Acceptance of Responsibility

Black argues that he should have received a three-level reduction in his base offense level for acceptance of responsibility, despite receiving an obstruction of justice

---

[3] *United States v. Taylor*, 620 F.3d 812 (7th Cir. 2010), involved Marty Taylor, one of the four bank robbers in the present case. We issued the decision, rejecting each of Taylor's arguments regarding an identical physical restraint enhancement and upholding the enhancement, while Black's appeal was pending.

enhancement, because extraordinary circumstances exist in his case. We review a district court's acceptance of responsibility determination for clear error. *United States v. Booker*, 248 F.3d 683, 690 (7th Cir. 2001).

A sentencing court may grant a defendant a two-level downward adjustment under § 3E1.1(a) of the Guidelines if the defendant "clearly demonstrates acceptance of responsibility for his offense." The defendant may receive an additional one-level downward adjustment if his base offense level is 16 or higher and he has "assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty." U.S.S.G. § 3E1.1(b) (2010). While an enhancement given by the sentencing court under § 3C1.1 for obstruction of justice does not automatically preclude a finding that the defendant also accepted responsibility for his crime, it generally suggests that the defendant has not accepted responsibility for his crime. U.S.S.G. § 3E1.1 cmt. n.4; *see United States v. Gonzalez*, 608 F.3d 1001, 1007-08 (7th Cir. 2010). This is a presumption that can be rebutted by the defendant only in "extraordinary cases."[4]

---

[4] U.S.S.G. § 3E1.1 cmt. n.4. The Sentencing Guidelines do not define the phrase "extraordinary cases." An example of an extraordinary case can be found in *United States v. Lallemand*, 989 F.2d 936 (7th Cir. 1993), where the defendant directed a friend to destroy evidence in the event that he was ever arrested, but upon his arrest confessed immediately, consented to a search of his home, and called the friend to tell him not to destroy the evidence.

Black contends that his obstructive conduct was minimal and is outweighed by the showing of his acceptance of responsibility. Black admits that he asked his girlfriend to remove the boots he wore during the robbery from his residence shortly after he was arrested; however, he maintains that this was a futile act because the FBI had already retrieved that evidence before he attempted to hide it. Black argues that even if he had successfully disposed of the boots, their absence would have been of minor significance because the government had other evidence to use in its case. Similarly, Black also contends that his attempt to fabricate an alibi, which he contests was mischaracterized, was only minimally obstructive because there was already evidence linking Black to the robbery. Black argues that his acceptance of responsibility was considerable because he entered into a plea agreement with the government, willingly participated in some of the investigation, did not falsely deny his conduct, and did not further obstruct justice after his first attempt to do so. We find these arguments unpersuasive. The fact that Black failed in his attempt to conceal evidence does nothing to convince us that the district court clearly erred in determining that his case was not "extraordinary." We do not reward defendants for failed attempts to obstruct justice. Moreover, pleading guilty does not automatically entitle a defendant to a downward adjustment for acceptance of responsibility. U.S.S.G. § 3E1.1 cmt. n.3. Black's conduct as a whole was inconsistent with the acceptance of responsibility adjustment, and we find that the district court did not err in denying Black a downward adjustment.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's enhancement findings and Black's sentence.