In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-2529

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY D. COOK,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 14-CR-226 — **J.P. Stadtmueller**, *Judge.*

ARGUED DECEMBER 8, 2016 — DECIDED MARCH 7, 2017

Before MANION, KANNE, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* Anthony Cook participated in an armed robbery of a Community Financial Service Center ("CFSC") in Milwaukee. He pled guilty to obstruction of commerce by robbery and to brandishing a firearm during the commission of a crime of violence. Over Cook's objection, the district court applied two enhancements to his sentence: a 2-level increase for causing a loss to a financial institution and a 2-level increase for physically restraining a per-

son during a robbery. On appeal, Cook argues that the district court erred in applying those enhancements. We disagree, so we affirm.

## I. BACKGROUND

On January 6, 2013, Cook and three others—Coleman Ferrell, Claudene Rutledge, and Vernell Staten—robbed a CFSC in Milwaukee. Ferrell entered the CFSC and tackled the security guard to the ground. Ferrell drew his firearm and pointed it at the guard's face, threatening to shoot. Cook then entered wearing a mask and approached the teller, Rutledge, who was in on the robbery. Rutledge promptly opened the door to the safe, and Cook took approximately $337,100 in cash. He placed the cash in a plastic garbage bag. Cook and Ferrell then fled the scene with the cash in a getaway vehicle driven by Staten.

On December 2, 2014, a grand jury returned a three-count indictment against Cook. Count one charged him with conspiracy to obstruct commerce by robbery in violation of 18 U.S.C. §§ 1951(a) and 2. Count two charged him with obstruction of commerce by robbery in violation of 18 U.S.C. §§ 1951(a) and 2 ("Hobbs Act Robbery"). And count three charged him with brandishing a firearm during the commission of a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. Cook and the government entered into a plea agreement, in which Cook agreed to plead guilty to counts two and three, and the government agreed to dismiss count one.

The plea agreement also included a recommended sentencing guidelines calculation for count two. Cook and the government agreed that the base offense level for the offense

charged in count two was 20 under U.S.S.G. § 2B3.1(a). They further agreed to recommend a 3-level increase under § 2B3.1(b)(7)(D) for a loss of over $250,000 and a 3-level decrease under §§ 3E1.1(a) and (b) for acceptance of responsibility. The government also recommended two additional enhancements: (1) a 2-level increase under § 2B3.1(b)(1) for causing a loss to a financial institution and (2) a 2-level increase under § 2B3.1(b)(4)(B) for physically restraining a person during a robbery. Both of these additional enhancements were included in the plea agreement's calculation, but with the disclaimer that Cook "may oppose the government's recommendation" as to these enhancements. (R. 35 at ¶¶ 17, 18.) The plea agreement thus recommended an adjusted total offense level of 24 for count two.

The probation office then completed a presentence investigation report ("PSR"), which included its own guidelines calculation. The probation office's calculation mirrored the calculation in the plea agreement, recommending an adjusted total offense level of 24 for count two.

At the sentencing hearing, Cook objected to the two additional enhancements included in the plea agreement and the PSR. First, he argued that the CFSC was not a financial institution under § 2B3.1(b)(1). Second, he argued that imposing the physical-restraint enhancement under § 2B3.1(b)(4)(B) would result in impermissible double counting of the same relevant conduct. The district court rejected each of these arguments and applied the guidelines calculation included in the plea agreement and the PSR. Based on Cook's criminal history category of IV and his adjusted offense level of 24, the district court determined that the recommended guidelines range for count two was 77 to 96 months. The court fur-

ther determined that count three carried a mandatory minimum of 84 months' imprisonment. The court sentenced Cook to a below-guidelines sentence of 60 months on count two and 84 months on count three, to be served consecutively. Additionally, the court imposed a five-year term of supervised release and ordered that Cook pay $337,100 in restitution.

## II. ANALYSIS

On appeal, Cook argues that the district court improperly applied the financial-institution and physical-restraint enhancements. We review *de novo* the district court's application of the sentencing guidelines. *United States v. Lewis*, 842 F.3d 467, 476 (7th Cir. 2016). We begin with Cook's arguments regarding the financial-institution enhancement under § 2B3.1(b)(1) and conclude with his arguments regarding the physical-restraint enhancement under § 2B3.1(b)(4)(B).

### A. Financial-Institution Enhancement

Cook first argues that the district court erred by applying an enhancement under § 2B3.1(b)(1), which provides for a 2-level enhancement "[i]f the property of a financial institution or post office was taken." He first contends that the CFSC is not a financial institution. Alternatively, he argues that the term "financial institution" is unconstitutionally vague. We begin with his first argument.

When interpreting a specific provision of the sentencing guidelines, we "begin with the text of the provision and the plain meaning of the words in the text." *United States v. Hill*, 645 F.3d 900, 907–08 (7th Cir. 2011) (quoting *United States v. Arnaout*, 431 F.3d 994, 1001 (7th Cir. 2005)). As part of this analysis, we also consider the guideline's application notes,

which "are considered part of the guidelines rather than commentary on the guidelines." *United States v. Rabiu*, 721 F.3d 467, 471 (7th Cir. 2013). "[A]n application note has 'controlling weight unless it is plainly erroneous or inconsistent with' the text of the guideline it interprets." *United States v. Rollins*, 836 F.3d 737, 742 (7th Cir. 2016) (quoting *Stinson v. United States*, 508 U.S. 36, 45 (1993)). The application notes to § 2B3.1, however, are silent as to the meaning of financial institution.

The government argues that the application notes to a different section—U.S.S.G. § 2B1.1, a separate guideline that permits an enhancement for larceny or other theft involving fraud or deceit of a financial institution—are instructive here. Those application notes define "financial institution" in relevant part as "any state or foreign bank, trust company, credit union, insurance company, investment company, mutual fund, savings (building and loan) association, union or employee pension fund … and any similar entity." U.S.S.G. § 2B1.1 cmt. n.1. But because those application notes pertain to a different guideline, they are not binding on our interpretation of § 2B3.1. Our plain meaning analysis is thus limited to the text of that guideline.

*Black's Law Dictionary* broadly defines "financial institution" as "[a] business, organization, or other entity that manages money, credit, or capital, such as a bank, credit union, savings-and-loan association, securities broker or dealer, pawnbroker, or investment company." *Black's Law Dictionary*, 663 (8th ed. 2004). The CFSC seems to fit this definition. According to its website, "CFSC is a third-generation, family-owned check cashing company with 175+ locations nationwide." *CFSC*, About, https://www.cfsc.com/about/.

Moreover, it offers its customers a variety of financial services including check cashing, money transfers, money orders, bill payments, and short-term loans. (R. 53-2.) In fact, the term "financial" is in its name—Community *Financial* Service Center.

Cook argues that this definition of financial institution is too broad, sweeping in far too many types of businesses within the enhancement's scope. He thus argues in favor of an alternative definition: a financial institution is an entity that serves a depository function. To reach this conclusion, Cook considers the text of the guideline. Because the guideline also covers the robbery of a post office—which is a depository of mail—Cook contends that all entities covered by the guideline must serve a similar depository function. A bank—which is a depository of money—is Cook's paradigmatic example of a financial institution.

We are unpersuaded by Cook's definition. He has cited no authority for it; nor could we find any. Moreover, although a post office is a depository, it is a depository of mail, not money: the functions of banks and post offices are inherently different. Accordingly, we reject limiting the definition of "financial institution" to those entities that serve a depository function.

We also think it is unnecessary to delve into the specific contours of the definition of financial institution here. We think it is enough to say that a business that offers an array of financial services, including check cashing, money transfers, money orders, and loans, surely fits within the plain meaning of the term "financial institution." We hold that the CFSC is a financial institution under § 2B3.1(b)(1).

Alternatively, Cook argues that the term "financial institution" is unconstitutionally vague, relying on our decision in *United States v. Hurlburt*, 835 F.3d 715, 725 (7th Cir. 2016) (en banc) (invalidating § 4B1.2(a)(2)'s residual clause as unconstitutionally vague). This week, the Supreme Court overturned that decision, holding that "the Guidelines are not subject to a vagueness challenge under the Due Process Clause." *Beckles v. United States*, 580 U.S. ___, No. 15-8544, slip op. at 5 (Mar. 6, 2017). Cook's vagueness argument is thus without merit.

*B. Physical-Restraint Enhancement*

Cook next argues that the district court erred by applying an enhancement under § 2B3.1(b)(4)(B), which provides for a 2-level enhancement "if any person was physically restrained to facilitate commission of the offense or to facilitate escape." Here, the district court applied this enhancement because of the actions of Cook's accomplice, Ferrell, who tackled the security guard and held him at gunpoint.

To start, Cook doesn't dispute that Ferrell's conduct constituted a physical restraint. "[T]he fundamental characteristic of the physical-restraint enhancement is to punish one for depriving a person of his freedom of physical movement … ." *United States v. Black*, 636 F.3d 893, 900 (7th Cir. 2011). By tackling the security guard and pointing a gun at his face, Ferrell clearly deprived the guard of his freedom of physical movement. That is exactly the type of conduct that the physical-restraint enhancement covers. *See id.*

Cook also doesn't dispute that Ferrell's physical restraint was attributable to him as relevant conduct under § 1B1.3(a)(1)(B). Ferrell's act constituted "relevant conduct"

attributable to Cook because it was clearly within the scope of, in furtherance of, and reasonably foreseeable in connection with their joint act of robbery. *See* U.S.S.G. § 1B1.3(a)(1)(B).

Instead, Cook argues that the district court erred by impermissibly double counting Ferrell's act of physical restraint, which resulted in the imposition of a longer sentence. In the sentencing context, double counting refers to the district court's use of the same conduct more than once to increase a defendant's sentence. *United States v. Vizcarra*, 668 F.3d 516, 519 (7th Cir. 2012). Double-counting claims come in two varieties. First, a defendant may claim that the district court used the same conduct to form the factual basis for an element of the underlying offense and to support an enhancement. Second, a defendant may claim that the district court used the same conduct to support multiple enhancements. *Id.* Cook's claim is of the first variety. In short, he argues that the district court impermissibly double counted Ferrell's restraint of the guard as both an element of the underlying offense of Hobbs Act Robbery and as conduct giving rise to the 2-level enhancement under § 2B3.1(b)(4)(B).

Cook's argument, however, is a nonstarter. He cites two of our cases to support his argument: (1) *United States v. Senn*, 129 F.3d 886 (7th Cir. 1997), and (2) *United States v. Taylor*, 620 F.3d 812 (7th Cir. 2010). In those cases, we applied a general rule that "a characteristic shared by all instances of a crime is reflected in the base offense level for the crime and therefore is unavailable for use as an enhancement." *Taylor*, 620 F.3d at 815; *see also Senn*, 129 F.3d at 897 (holding that impermissible double counting occurs "if the offense itself *necessarily* includes the same conduct as the enhancement").

We followed that general rule in other cases. *See, e.g., United States v. Bell*, 598 F.3d 366, 372 (7th Cir. 2010) ("Impermissible double counting occurs when … the same underlying facts that establish an element of the base offense are used to justify an upward enhancement."); *United States v. Rodgers*, 610 F.3d 975, 978 (7th Cir. 2010) (citing *Senn*, 129 F.3d at 897 and *Bell*, 598 F.3d at 372–73 for the same proposition).

But in 2012, we reversed course, holding that "the same conduct may determine the base offense level and also trigger cumulative sentencing enhancements and adjustments *unless* the text of the applicable guideline explicitly states otherwise." *Vizcarra*, 668 F.3d at 525. We therefore clarified that "there is no background rule against double counting in the guidelines." *Id.* Instead, double counting is presumed permissible as a "mechanism employed by the guidelines in part to reflect the seriousness of the offense." *United States v. Loffredi*, 718 F.3d 991, 994 (7th Cir. 2013). Any language in our earlier cases contradicting our holding in *Vizcarra* is no longer good law: Cook's reliance on *Senn* and *Taylor* is misplaced.

Even assuming that the district court double counted Ferrell's restraint of the guard as both an element of the underlying offense of Hobbs Act Robbery and for purposes of the enhancement under § 2B3.1(b)(4)(B), a premise the government contests, the court committed no error.[1] Again, we

---

[1] We note that double counting may not have even occurred here. As we discussed in *Taylor*, in a portion of the opinion that likely survived our decision in *Vizcarra*, it is possible to commit federal robbery without an act of physical restraint. 620 F.3d at 815–16. Therefore, physical restraint is not an element of federal robbery. Although *Taylor* involved federal

(continued…)

presume that this counting was permissible absent an indication to the contrary in the guidelines. Because § 2B3.1(b)(4)(B) and its application notes contain no explicit prohibition against double counting the act of physical restraint, the presumption of permissibility cannot be overcome. The district court properly applied the physical-restraint enhancement.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment and sentence.

---

(…continued)

bank robbery under 18 U.S.C. § 2113(a) and not specifically Hobbs Act Robbery, those crimes overlap to a significant degree. *See United States v. Starks*, 472 F.3d 466, 470 (7th Cir. 2006). Most importantly, they contain the same use-of-force requirement, which is the element of federal robbery that Cook argues is synonymous with physical restraint.