In the

# United States Court of Appeals

## For the Seventh Circuit

No. 22-2174

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMIC C. JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:21CR26-001 — **Holly A. Brady**, *Chief Judge.*

ARGUED JUNE 6, 2023 — DECIDED FEBRUARY 29, 2024

Before BRENNAN, ST. EVE, and LEE, *Circuit Judges.*

PER CURIAM. Jamic Johnson was convicted of federal fire-arms and methamphetamine-related drug-trafficking of-fenses. To determine his sentencing guideline range for the drug-trafficking offense, the district court tallied the amount of methamphetamine Johnson was responsible for dealing. In doing so, however, the district court did not account for whether the drugs in question were actual, pure methamphet-amine or a mixture containing methamphetamine, as the

Sentencing Guidelines require. Had the district court done so, Johnson's guidelines range would have been lower, and nothing in the record rebuts the presumption that this error prejudiced Johnson. Accordingly, we vacate the judgment and remand the case for resentencing so that the district court can correctly determine the quantity of methamphetamine attributable to Johnson.

### I. Background

While executing a warrant at Johnson's home, police officers discovered guns and baggies containing substances that appeared to be methamphetamine. Lab tests later confirmed that one baggie contained 68.2 grams of a substance that was 83% pure methamphetamine; another baggie contained 33.1 grams of a substance that was 39% pure methamphetamine; and two other baggies contained a total of eight grams of a methamphetamine mixture of unknown purity.

After his arrest, Johnson agreed to speak with officers about his drug dealing. He said he had purchased methamphetamine for distribution on at least three prior occasions. The first time, he bought one ounce. And, although he could not recall the precise amounts he bought on the other occasions, he recounted that it was as many as four ounces per transaction. He also told the officers that the guns and drugs in the basement were his, and that he knew he was prohibited from possessing guns as a result of his prior felony convictions.

Johnson eventually pleaded guilty to possessing more than fifty grams of methamphetamine with intent to distribute, 21 U.S.C. § 841(a)(1); possessing a firearm in furtherance

of a drug trafficking crime, 18 U.S.C. § 924(c); and unlawfully possessing a firearm as a felon, *id.* § 922(g)(1).

In anticipation of sentencing, the probation office prepared a presentence investigation report (PSR). The PSR attributed to Johnson more than 150 grams and less than 500 grams of actual methamphetamine, corresponding to a base offense level of 32. *See* U.S.S.G. § 2D1.1(c). To arrive at this calculation, the probation office first took the weight of the methamphetamine mixtures in the two larger baggies and multiplied them by their respective purities, resulting in a total of 69.5 grams of actual methamphetamine. To this quantity, the probation office added the metric equivalent of five ounces of actual methamphetamine—141.75 grams—in an effort to reflect the drugs Johnson admitted to buying during his proffer interview (one ounce at first, then as many as four ounces later). Finally, the probation office calculated a criminal history score of five, corresponding to a criminal history category of III.

At the sentencing hearing, the district court adopted the PSR's methamphetamine calculation (to which Johnson did not object) as well as the recommended guideline range of 135 to 168 months' imprisonment. The range was based on a total offense level of 31 for the drug and felon-in-possession offenses coupled with a criminal history category of III (the guideline range for the § 924(c) offense was 60 months, which must be served consecutively). When imposing the sentence, the court settled upon a 135-month term of imprisonment for the drug-trafficking charge and added 60 months for the § 924(c) offense. As for the felon-in-possession count, which carried a 120-month statutory maximum sentence, the court

imposed a sentence of 120 months' imprisonment to run concurrently with the sentence for the drug offense.

**II. Analysis**

On appeal, Johnson argues that the PSR's determination that he had trafficked 150 to 500 grams of methamphetamine (which the district court adopted) ignored the difference between actual methamphetamine and a mixture or substance containing methamphetamine and treated all of the drugs attributable to him as though they were the former.

The Sentencing Guidelines distinguish between actual methamphetamine (what the Guidelines call "Methamphetamine (actual)") and a mixture or substance containing a detectable amount of methamphetamine (what the Guidelines call simply "Methamphetamine"). U.S.S.G. § 2D1.1(c)(5); U.S.S.G. § 2D1.1, n. A.

Actual methamphetamine refers to the weight of pure methamphetamine that is in a mixture containing methamphetamine. It can be calculated by multiplying the mixture's overall weight by its purity. For example, a ten-gram mixture of methamphetamine that is 50% pure contains five grams of actual methamphetamine. U.S.S.G. § 2D1.1, n. B.

The Guidelines provide that, when dealing with a drug offense involving methamphetamine, the court should use the greater of the offense level determined by the total weight of the methamphetamine mixture or the offense level determined by the weight of actual methamphetamine in the mixture (to the extent it can be calculated). *Id.* This is why "purity matters for methamphetamine." *United States v. Carnell*, 972 F.3d 932, 939 (7th Cir. 2020). Furthermore, if the district court chooses to rely on the quantity of actual

methamphetamine in a mixture (as the court did here), the court must ensure that the government has provided a reliable, factual basis to compute it. *Id.* at 941.

When calculating the total drug quantity attributable to Johnson, the district court included the five ounces of methamphetamine-containing substances that Johnson admitted to purchasing on other occasions. And Johnson does not challenge the court's determination that these prior purchases constituted relevant conduct under U.S.S.G. § 1B1.3(a).

The problem is that the district court went on to assume that all five ounces were comprised of 100% actual methamphetamine—a proposition that finds no support in the record. *See Carnell*, 972 F.3d at 939 (noting that evidence of relevant conduct must be reliable, and the government bears the burden of proving it by a preponderance of the evidence). This assumption was critical because police officers recovered only 69.5 grams of actual methamphetamine in Johnson's home, well short of the 150 to 499 grams needed to support the sentencing range.

Indeed, to the extent that the record contains any information about the purity of the methamphetamine mixtures that Johnson handled, they come from the two larger baggies police found in his home, which contained 83% and 39% actual methamphetamine. When faced with competing estimates of drug purity, as occurred here, we have encouraged district courts to err on the side of caution and select the more conservative estimate. *See United States v. Miller*, 834 F.3d 737, 741 (7th Cir. 2016). Using the more conservative measure of 39%, the total amount of actual methamphetamine in the five ounces would be 55.3 grams. This, combined with the 69.5 grams found in Johnson's home, would add up to 124.8

grams—25 grams less than the 150 grams necessary to support a total offense level of 31. Using this calculation, then, Johnson's total offense level would be 29, and the guideline range would be 120 to 135 months' imprisonment, significantly shorter than the 135- to 168-month range the district court used.

All that said, because Johnson did not object to the PSR's drug-quantity calculation below, our review is for plain error. Thus, a remand is proper only if a plain and obvious error affected Johnson's substantial rights and the fairness or integrity of the judicial proceeding. *See United States v. Hopper*, 934 F.3d 740, 766 (7th Cir. 2019).

Here, the error resulted in a higher guidelines range, and we presume that an error affecting a defendant's guidelines range also affects his substantial rights. *See Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016); *United States v. Adams*, 746 F.3d 734, 743 (7th Cir. 2014). Nothing in this record rebuts that presumption. If the district court had properly calculated the weight of the methamphetamine at issue, Johnson would have had a base offense level of 30 (instead of 32), resulting in a total offense level of 29 (instead of 31) after applying the other uncontested adjustments. After accounting for the statutory minimum sentence, 21 U.S.C. § 841(b)(1)(A)(viii), the district court would have arrived at a guidelines range of 120 to 135 months (instead of 135 to 168 months). And the record shows that the district court considered the guidelines range when formulating the sentence.

Despite this, the government defends the sentence by pointing out other sources of evidence that it believes could support a finding that Johnson dealt more than 150 grams of actual methamphetamine. For example, the government

points to a number of additional drug transactions and a financial ledger noted in the PSR that the district court could have used to support its guideline calculation.

But the district court is in a better position to resolve these factual disputes in the first instance. And, even if the government's newly cited evidence could save the court's sentence, we decline to embrace these findings ourselves when the government presents them for the first time on appeal. *See Hopper*, 934 F.3d at 770. In such circumstances, the appropriate course is to remand the case to give the district court an opportunity to consider them. *Id.*; *see also United States v. Nitzkin*, 37 F.4th 1290, 1293 (7th Cir. 2022) (remanding to address plain error in application of sentencing enhancements).

Finally, the government argues that Johnson has not shown he was prejudiced because the district court sentenced him based on the factors set forth in 18 U.S.C. § 3553(a)—most notably, his "criminal history" and "large-scale armed drug trafficking"—and not on the drug-quantity finding. But the court did not say that it would have reached the same sentence regardless of the amount of methamphetamine involved. We therefore cannot say with confidence that the error was harmless. *See United States v. Asbury*, 27 F.4th 576, 582 (7th Cir. 2022).

In sum, when dealing with methamphetamine-related drug offenses, the district court must account for the difference in the way the Sentencing Guidelines treat mixtures or substances containing methamphetamine and actual methamphetamine. Because the district court did not do so here, we VACATE the sentence and REMAND the case for resentencing.